IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| SHEILA HUDSON, | ) | Civil No.: 3:10-cv-01109-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Steven J. Munson
H. Peter Evans PC
308 SW First Avenue, Suite 200
Portland, OR 97204

    Attorney for Plaintiff

S. Amanda Marshall, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Willy M. Le
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A

FINDINGS AND RECOMMENDATION - 1

Seattle, WA 98104

Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Sheila Hudson brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for Disability Income Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below, the Commissioner's decision should be affirmed.

**Procedural Background**

Plaintiff filed applications for DIB and SSI on April 22, 2007, alleging that she had been disabled since September 2, 2003.

After her claims had been denied initially on August 22, 2007 and upon reconsideration on April 15, 2008, Plaintiff timely requested an administrative hearing.

On July 29, 2009, a video hearing was conducted by Administrative Law Judge (ALJ) Patricia Hartman. Plaintiff and Diane Weber, a Vocational Expert (VE), testified at the hearing.

In a decision filed on September 3, 2009, ALJ Hartman found that Plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on July 15, 2010, when the Appeals Council denied Plaintiff's request for review. In the present action, Plaintiff challenges that decision.

**Background**

FINDINGS AND RECOMMENDATION - 2

Plaintiff was born on June 20, 1968, and was 35 years old at the time of the alleged onset of disability. She obtained a GED and has past relevant work experience as a bank teller, child care worker, assembly worker, inventory/office manager, windows maker, portrait studio worker, and loan processor.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the

regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

<u>Step Four</u>. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(e).

<u>Step Five</u>. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. <u>Tackett</u>, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. <u>Id.</u>

## **Medical Record**

Like the parties, I will address relevant portions of the medical record only in the discussion of Plaintiff's arguments.

## Testimony

### Plaintiff

Plaintiff testified as follows at the hearing before the ALJ:

Plaintiff's last work, as a bank teller, ended because Plaintiff's deteriorating health caused her to miss work frequently. About the time that job ended, Plaintiff was diagnosed with lupus and fibromyalgia.

Plaintiff struggles to lift 20 pounds. On her best days, which occur 2 or 3 times a week, she experiences pain at the level of 5 on a 10 point scale; she experiences pain at the level of 10 a couple times every three months. On an average day, her pain is at the level of 7 or 8. Plaintiff takes multiple medications, including oxycodone, percocet, and muscle relaxers. She takes 4 to 5 oxycodone and percocet per day. Side effects of these medications include drowsiness, dry mouth, tremors, and gastrointestinal problems.

Plaintiff is 5 feet 5 inches tall and weighs 255 pounds. She had weighed 150 to 170 pounds while she was working, and her weight increased because of the side effects of medications and lack of exercise. Plaintiff can walk only about a half a block before she has to sit down, and can stand no more than 10 minutes at a time. She needs to stand and move around after sitting for 30 minutes. Plaintiff cannot squat or stoop and cannot climb many stairs. She has difficulty using her hands because of neuropathy, numbness, swelling, and joint pain. Plaintiff cannot always pick up small objects such as coins, and cannot always write.

In addition to these problems, Plaintiff suffers from social anxiety; she had been out of her house only about three times during the three months before the hearing. Plaintiff had

weekly crying spells, and was taking prozac and cymbalta to help with her depression and anxiety.

Because of problems with cramping and pain in her hands, Plaintiff did not do as much crocheting and scrapbooking as she had previously. Her hands cramped after doing these activities for about 30 minutes. She could not do the dishes as often as she would like because she could not stand long enough.

Plaintiff had difficulty sleeping throughout the night and occasionally stopped breathing while sleeping. She had not been diagnosed with sleep apnea, but was awaiting a sleep study. Plaintiff usually slept 2 to 4 hours per night, and usually took two naps, which were about an hour to an hour and a half long, during the day.

## VE

The ALJ posed a hypothetical describing an individual with Plaintiff's education and experience who could perform sedentary work with the following limitations: the individual could not climb ladders, ropes, or scaffolds; could only occasionally climb stairs or kneel, crouch, bend, or stoop; could not crawl, twist, work with dangerous unprotected machinery or work at unprotected heights; and needed simple, unskilled work that did not require intense concentration. The VE testified that such an individual could work as an addresser, a charge account clerk, or a telephone information clerk. In response to questioning by Plaintiff's attorney, the VE testified that an individual who missed more than one day of work per month would have difficulty maintaining employment.

## ALJ's Decision

FINDINGS AND RECOMMENDATION - 6

At the first step of her disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability.

At the second step, the ALJ found that Plaintiff's arthritis, diabetes mellitus with peripheral neuropathy, lupus, and fibromyalgia were severe impairments.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App.1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC). She found that Plaintiff retained the capacity to perform sedentary work except to the extent that she could not climb ladders, ropes, or scaffolds; could only occasionally climb stairs or kneel, crouch, bend, or stoop; could not crawl, twist, work with dangerous unprotected machinery or work at unprotected heights; and needed simple, unskilled work that did not require intense concentration. The ALJ further found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with this assessment.

Based upon the testimony of the VE, at the fourth step, the ALJ found that Plaintiff could not perform her past relevant work as a bank teller, child care worker, assembly worker, inventory/office manager, windows maker, portrait studio worker, or loan processor. She noted that the VE had testified that most of Plaintiff's past relevant work had been performed at the medium exertional level, and that the one sedentary job Plaintiff had performed had been a semi-skilled position that was beyond the assessed residual functional capacity.

Based upon the VE's testimony, at the fifth step, the ALJ found that Plaintiff could work as an addresser, charge account clerk, or telephone information clerk. Based upon this

FINDINGS AND RECOMMENDATION - 7

conclusion, she found that Plaintiff was not disabled within the meaning of the Act.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ erred in finding that her allegations concerning her

FINDINGS AND RECOMMENDATION - 8

symptoms and limitations were not wholly credible, improperly rejected the opinions of treating and examining physicians, and failed to properly assess her residual functional capacity.

1. **ALJ's Credibiltiy Determination**

Where, as here, a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

Plaintiff argues that the ALJ improperly found that her symptoms had not worsened since 2006 and that she was able to work until May, 2008 despite her symptoms, failed to consider testimony from herself and her husband regarding her employment in 2006, and improperly found that her complaints of pain were inconsistent with the objective medical evidence. The Commissioner correctly notes that most of these arguments appear "unrelated to Plaintiff's case."[1] In the ALJ's decision, I find no reference to the stability of Plaintiff's symptoms after 2006, to Plaintiff's ability to work until May, 2008, or to inconsistency of Plaintiff's complaints of pain with the objective medical record. In addition, Plaintiff was divorced when she applied for disability benefits and at the time of the hearing, and I find no statement from a present or former husband in the administrative record. Accordingly, most of Plaintiff's arguments concerning the ALJ's credibility determination are without merit.

Plaintiff also contends that the ALJ failed to comply with the requirement that she

---

[1]In an Order filed on August 16, 2011, I granted Plaintiff's motion to reset the deadline for filing an opening memorandum to September 30, 2011. Plaintiff submitted her opening memorandum on August 7, 2012, approximately 10 months after that date. She has not filed a reply memorandum addressing the Commissioner's response to her memorandum.

FINDINGS AND RECOMMENDATION - 9

consider the factors set out in SSR 96-7p and failed to set out clear and convincing reasons supporting her credibility determination.

These arguments fail. The ALJ explicitly cited SSR 96-7p and enumerated the factors to be considered in evaluating credibility. She then set out several clear and convincing reasons for concluding that Plaintiff was not wholly credible. The ALJ concluded that Plaintiff's activities of daily living were not consistent with the level of impairment she alleged. In support of this contention, she noted that Plaintiff had stated that she cooked her meals, cleaned her house, did her laundry, washed dishes, prepared her daughter for school every morning and helped her with her homework, continued to engage in her crocheting and scrapbooking hobbies, took walks and went swimming, and sold items through Ebay to support herself. A claimant's daily activities are relevant in evaluating credibility, SSR 96-7p, and an ALJ can reasonably discredit a claimant's testimony based upon these activities. E.g., Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (ALJ may discredit claimant's testimony based upon activities of daily living when activities "contradict claims of totally debilitating impairment").

The ALJ also cited Plaintiff's failure to seek consistent medical treatment as evidence that her allegations concerning the severity of her impairments were not wholly credible. She also cited evidence in the medical record indicating that Plaintiff repeatedly missed medical appointments and failed to follow up with her doctors for recommended testing. This evidence was relevant, because follow up with medical treatment is a factor to be considered in assessing credibility. See SSR 96-7p at *7 (claimant's statements may be less credible if medical reports or records show failure to follow treatment as prescribed); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (lack of treatment a legitimate consideration in assessing credibility).

FINDINGS AND RECOMMENDATION - 10

In support of her credibility determination, the ALJ also cited inconsistencies between Plaintiff's allegations and evidence in the medical record. This supported the ALJ's credibility assessment, because the inconsistency of a claimant's testimony with the medical record is a legitimate basis for discounting a claimant's credibility. Carmickle v. Commissioner, 533 F.3d at 1155, 1161 (9th Cir. 2008); SSR 97-6p (consistency of claimant's testimony "both internally and with other information in the case record" is significant indication of a claimant's credibility).

The ALJ provided clear and convincing reasons for concluding that Plaintiff's allegations concerning the severity of her symptoms and impairments were not wholly credible.

2. **Rejection of Medical Opinion**

Plaintiff contends that the ALJ "improperly rejected the opinion of the treating and examining physicians." She cites the relevant standards for evaluating such opinions, and contends that the ALJ improperly rejected the opinion of her "primary treating source" that she "could not sustain full time work due to her severe disabilities."

Plaintiff's memorandum does not explicitly identify the "treating source" to whom she refers, and does not cite the opinion of any examining doctor. However, it is apparent that Plaintiff is referring to Nurse Practitioner Kathleen Harris Hobbs's answers to a questionnaire which Plaintiff's counsel had addressed to Dr. Scott Grady. In her responses to the questionnaire, Ms. Hobbs indicated that Plaintiff had been diagnosed with insulin dependent diabetes mellitus, GERD, asthma, depression, hypothyroid, and peripheral neuropathy with poor prognosis, and had presented with depression. She opined that Plaintiff was incapable of even low stress jobs. Ms. Hobbs further opined that, during an 8-hour work day, Plaintiff could sit and stand for 5 minutes at a time for a total of less than two hours and could walk for three minutes at a time for

FINDINGS AND RECOMMENDATION - 11

a total of one hour, needed to rest for one to two-day intervals, needed to elevate her legs at more than 45 degrees when seated; could not lift anything or use her hands, would miss more than four days of work a month because of her impairments, and would not improve.

The ALJ gave "limited weight" to Ms. Hobbs's opinions.

Plaintiff correctly notes that a treating source's opinion is entitled to greater weight than the opinion of other physicians, and that an ALJ must provide clear and convincing reasons for rejecting a treating physician's unconvtroverted opinion, and must provide specific, legitimate reasons based upon substantial evidence in the record for rejecting opinions of a treating source which are contradicted.  See, e.g., Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989); Lester v. Chater, 81 F.2d 821, 830-31 (9th Cir. 1995); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  However, the record before the court fully supports the Commissioner's assertion that there is no evidence that Ms. Hobbs worked closely with Dr. Grady in treating Plaintiff or responding to the questionnaire from Plaintiff's counsel.  This is significant: Ms. Hobbs's opinion was not subject to the standards for evaluating the opinions of a "treating source" noted above because she was not an "acceptable medical source."  See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (physician's assistant not an "acceptable medical source" where record did not show she had worked under close supervision of physician); 20 C.F.R. §§ 404.1513(a), 416.913(a) (listing "acceptable medical sources"); 20 C.F.R. §§ 404.1513(d)(1), 416.915(d)(1) (therapists and nurse practitioners listed as "other" sources, not "acceptable" medical sources).

The distinction between acceptable medical sources and "other sources" is significant, because an ALJ may discount the opinion of an "other source" by providing "germane reasons" for doing so.  Molina, 674 F.3d at 1111.  Here, the ALJ gave "limited weight" to Ms. Hobbs's

opinions because she found they were inconsistent with medical evidence and inconsistent with Plaintiff's testimony concerning her limitations. The reasons are "germane," and are supported by the ALJ's discussion of the medical evidence and examples she noted of inconsistencies between the nurse practitioner's opinions and Plaintiff's testimony. The ALJ specifically cited as inconsistent with those opinions Plaintiff's testimony that she carried out activities which required use of her hands and testimony that she could drive 20 miles – activities that were not possible with the limitations to which Ms. Hobbs opined.

The ALJ provided sufficient support for her rejection of the opinion of Plaintiff's treating nurse practitioner.

3. **ALJ's RFC Assessment**

Plaintiff contends that the ALJ erred in failing to assess her capacity to perform sustained work activity for 8 hours a day, 5 days a week, and failed to include in her decision a "narrative discussion" describing how the evidence supported her conclusions as to each of Plaintiff's functional capacities.

There is no question that, in assessing a claimant's residual functional capacity, an ALJ is required to determine a claimant's ability to perform sustained work activity for 8 hours per day, 5 days per week. See SSR 96-8p; 20 C.F.R. §§ 404.1545 (agency determines residual functional capacity for work activity on regular, continuing basis). However, there is no basis for concluding that the ALJ here did not assess Plaintiff's ability to sustain full time work activity, or for concluding that she failed to adequately explain her assessment of Plaintiff's functional capacities. Plaintiff has cited, and I have found, no statutory, regulatory, or judicial authority requiring that an ALJ include in every decision a statement affirming that the RFC assessment refers to activities that the claimant can carry out on a continuous, full time basis. Such a

declaration would be a needless redundancy, because the RFC is by definition an assessment of a claimant's ability to sustain full time work activity. In the decision at issue here, the ALJ supported her RFC assessment with a thorough discussion of the medical record, and there is no basis for concluding that, in finding that Plaintiff retained the functional capacity to perform sedentary work, subject to specific restrictions, the ALJ did not consider Plaintiff's ability to sustain that activity on a full time basis. In addition, in her review of the record and analysis of medical opinions and evidence, the ALJ adequately set out the basis for her conclusions as to Plaintiff's functional capacities.

## Conclusion

A judgment should be entered AFFIRMING the decision of the Commissioner and DISMISSING this action with prejudice.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due January 25, 2013. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 7th day of January, 2013.

        /s/ John Jelderks  
        John Jelderks  
        U.S. Magistrate Judge